Good afternoon. May it please the court, Lawrence Rolfing on behalf of Rick Machado. This case is a relatively straightforward social security disability case. It raises two issues. One is where the ALJ specifically finds that the individual has a residual functional capacity with a severe limitation in fine manipulation, excuse me, in fine dexterity, can nonetheless find, based on vocational expert testimony, and rely upon work that requires fine dexterity as a matter of the companion publications to the DOT. The second issue that's before the court is whether, in accordance with well-developed Eighth Circuit law on the subject, that borderline intellectual functioning per se constitutes a severe impairment because it impacts the mandatory consideration of education under the statute and the ability to learn as a residual functional capacity. It's twice. Mr. Rolfing, if I may interrupt at this point, because you corrected yourself in the use of the terminology, and it comes right to a point I'm concerned about. That was the difference between fingerling and dexterity. You emphasized in your presentation, in your brief, fingerling. But, frankly, I was more concerned about dexterity in the sense of this man's ability to hold things. If I recall, he was fired in one job as a busboy, couldn't hold things. And yet the ALJ said that one of the things he could do was be a courier, and one of the things he could do was to be a sorter. I wondered why you didn't emphasize in your brief, more than you did, this man's apparently difficulty in holding things because of his hand condition. If we look at page 143 of the administrative record, we have a picture of Mr. Machado's hands. A picture is worth a thousand words. It is rather graphic. And Mr. Machado did testify to his losing the busboy job because he was dropping and breaking glasses. The reason that I did it as a tactical question is if I assume everything that the ALJ found at a specific step in the sequential evaluation process is true, does the final, ultimate conclusion stand? And when I get to step four of the sequential evaluation process where residual functional capacity is assessed, and the ALJ says this person has a severe impairment in the ability to engage in fine dexterity, I apologize, my phone, I turn it off and it comes on at 1240 to remind me to eat lunch every day. We'll break shortly. And I look at that and I look at the occupations that I think the vocational expert identified because the ALJ never asked, and I'm struck by the proposition that these occupations require some meaningful degree of aptitude for finger dexterity. And I want to point out that that is just fundamental base error on the face of the ALJ decision. We don't need to attack the ALJ's analysis of residual functional capacity. From where he starts, I cannot get to where the vocational expert wants me to go. It just doesn't make sense under Social Security ruling 004-P. And I would agree with Your Honor that there are significant questions that could be raised on remand about the ability to manipulate. And we did touch on this by discussing at length in both our brief to the district court and our brief here, the issue of manual dexterity because the jobs require below average or average manual dexterity in addition to the issue of finger dexterity in the four occupations that were identified by the vocational expert. And those are at the DOT with the companion publications or under tab 19 in the excerpts. And they very clearly delineate the problems or the requirements of dexterity as bona fide occupational qualifications. And the most important thing is that Social Security ruling 004-P requires that the ALJ ask, make the affirmative step of asking, does your Mr. Vocational Expert, does your testimony here comply with the DOT and its companion publications? And if not, please explain your deviation, if any. And then this circuit has long held that as long as the explanation is persuasive, that the ALJ may at that point rely upon the testimony of the vocational expert. But the ALJ clearly abdicated his responsibility under the ruling. I'm going to get this probably just a little bit off, but my recollection is that the four occupations contemplate dexterity in the lower third of the population. And also then there is a 10 percent cut. Is there any evidence in the record that shows that his level of dexterity is within that 10 percent cut, as contrasted with the lower one third? Yes, Your Honor. It's unfortunate that we have words like severe that mean one thing at step two of the sequential evaluation process. But when we get to step four of the sequential evaluation process, the word severe has its common everyday meaning. If I have a severe headache, I'm going into a dark room. And the ALJ didn't find that his ability to engage in dexterous activity was severe at step two. He found at step four of the sequential evaluation process that his ability to finger was severely limited. And when we look at the companion publications, the guidelines for occupational exploration, we see that level five in some of the items, that level five, which is the bottom 10 percent of the population, is a markedly low aptitude for ability. And I don't think that given the tenor of the ALJ's decision and the graphic evidence of what Mr. Machado's hands look like, that I think it is patent that the ALJ intended at least a markedly low level of aptitude when he told Mr. Farah to assume a severe limitation in finger dexterity. That's why the ALJ shifted gears in his examination of the vocational expert to let's focus on the issue of dexterity. I want you to assume that his ability to engage in dexterous activity is severely limited. The other question that's presented in this case is the question of borderline intellectual functioning. And I touched upon this in my opening statement. The Eighth Circuit is very clear that borderline intellectual functioning is a, per se, a severe impairment that should be included in questioning of the vocational expert. The district court declined to impose that very nominal obligation upon the Social Security Administration for the ALJs to ask. It is not a burdensome task. It didn't happen here, I presume, because the ALJ adduced the evidence of borderline intellectual functioning after the hearing but before the decision was made, and perhaps he thought it would be burdensome to send interrogatories to ask Mr. Farah the question. But that doesn't comport with the statute's requirement for substantial evidence, and he should have asked, at least by interrogatory, does the presence of borderline intellectual functioning affect your analysis? And I will reserve the balance of my time. Thank you. Thank you. Good morning, Your Honors. My name is Theophis Regans. I am here to represent the Commissioner, Michael Astrew. A couple of things that I want to talk about initially. One is that I actually believe that the — there is actually no evidence to support claimant's argument that the claimant here could not perform the jobs that the vocational expert said that he could perform. There was a State agency position's functional assessment, and that assessment indicated that the claimant could do light work and actually indicated that he could — that he did not have a fingering or a manipulation limitation. The ALJ went a step further and reminded the V.E. of the claimant's severe impairment with finger and dexterity as a function of his congenital deformity that had been corrected. There is no evidence that he could not do these jobs based upon the functional assessment by the State agency position and also by his prior work history. It is the case that this claimant was able to do the job of a U-Haul rental trailer salesperson, a representative. And the limitations that are set forth are the description of that job is very similar to the job — to the jobs that the ALJ — that the V.E. cited that the claimant could do and that the V.E. — that the administrative law judge found that he, in fact, could do and that's why he was not disabled. I point out that in the — in the hearing itself, the ALJ specifically asked the claimant why he was no longer able to do the rental — the U-Haul rental trailer job. And he specifically asked him, is — is it because of pain with your back or pain in your hands? And the claimant testified that it was pain in his back. And that means that the only difference between his ability and the reason that he couldn't do his past relevant work was because of his inability to do the lifting. He went from a heavy exertion to a light exertion. So I — I submit to you that the ALJ — substantial evidence supports the ALJ's finding on this issue. Can I take your questions? Because I don't think I'm — do you have any questions? Well, what do you think about the borderline mental capacity? Why shouldn't that be included as the Eighth Circuit has suggested? Well, the cases that the claimant — that the claimant relied on in terms of the borderline — the Eighth Circuit cases are all distinguishable. In each case, for example, Vincent, there was a — there's a history of mental health treatment. That's — that wasn't the case here. In Lucy, there was an internal inconsistency that the Court focused on that the ALJ had stated in the decision. It stated two different things with regard to the mental impairment. In Hunt, the claimant suffered from depression, bad nerves, and bad memory. That wasn't the case here. And in Williams and Lowe, there was marked and moderate difficulties. Those things were not present here either. The commissioners' regulations indicate that when there is a mental impairment, the ALJ is supposed to determine whether or not that mental impairment is severe. In this particular case, the ALJ went the extra mile. The claimant didn't even allege that he had a mental impairment, but the ALJ noticed that there was a low IQ score on — in the record and says, I think, given that IQ score, we need to send him out and have a consultative examination. He did that. The consultative examiner gave him the — gave him a series of tests and concluded that he did have a borderline intellectual functional impairment, but there were no limitations that were secondary to that — to that impairment. And he went on to find that the claimant had an adequate ability to understand and follow complex instructions and a good ability to understand and follow simple instructions. In order for a mental impairment to be severe, according to the regulations, there has to be a significant limitation in the ability to do simple work. That didn't exist here. There was no — there was a non-severe mental impairment. That's in line with the regulations and is not inconsistent with any Ninth Circuit cases that I'm aware of. Okay. I submit that — that essentially the — the discussion with regard to — the argument with regard to the fingering is pretty much a red herring in this case. There is no evidence based upon what the claimant was able to do previously. There's an absence of treatment for the hand condition. He went to the consultative examiners. They did examinations. They noted the history of the hand condition. They did not assess any limitations. They noted that he complained only about his back and occasionally his foot. He did not complain about his hand limitations or any hand pain. There was no treatment. And the record noted since the time that he had his surgery, which was several, several years before. Any further questions, Your Honor? No, apparently not. Thank you. When the ALJ decided on the presence of manipulative limitations, he had rejected Dr. Shankerman's opinion that addressed Mr. Machado's ability to work, and so there is evidence that the ALJ relied upon. And when the Commissioner stands before the Court and tries to distance himself from an explicit finding of the ALJ that this individual at step four has a severe impairment in fine manipulation, we need to remember the Supreme Court's admonition in Chenery v. SEC and this Court's holding in Segera and another case that I can't recall off the top of my head. We know the principle. Yes. We don't affirm on grounds not articulated by the ALJ, and so the Court should discard that. And with respect to Mr. Machado's treatment for his hands and his borderline intellectual functioning, there isn't any indication that either of these conditions is remedial with any kind of treatment whatsoever. We don't waste resources by getting treated for something that's not remedial. And I'll submit my time. Thank you.   Thank you for the argument, and we will submit Machado.
judges: Ripple, Rymer, Fisher